**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KATHY KIDWELL,

       Plaintiff,                      CIVIL ACTION NO. 11-11076

vs.

                                       DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's Motion For Summary Judgment (docket no. 7) be denied, Defendant's Motion for Summary Judgment (docket no. 11) be granted, and the instant complaint be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 4, 2007, alleging disability since June 10, 2005. (TR 15). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On July 21, 2009 Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge (ALJ) Henry Perez, Jr. (TR 22-40). Vocational Expert (VE) Michael E. Rosko also appeared and testified at the hearing. In an August 21, 2009 decision the ALJ found that Plaintiff was not entitled to disability benefits because she was capable of performing past relevant work as an automobile assembly line worker. (TR 15-21). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross Motions

1

for Summary Judgment and the issue for review is whether Defendant employed the proper legal standards and whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was less than a month shy of forty-eight years old at the time of her alleged onset of disability, and she was fifty-two years old and considered a person approaching advanced age at the time of the administrative hearing. (TR 26, 36). She has a high school education and lives in a single-story home with her husband. (TR 26). Plaintiff testified that she worked for General Motors as an assembly line worker until she injured her lower back. In her assembly line position she was required to lift less than ten pounds while standing, push rear tailgate emblems onto trucks, and install plugs under wheel wells. (TR 26, 35, 87). Plaintiff testified that she can no longer perform her assembly line job because she is able to stand only ten to fifteen minutes at a time before needing to sit to alleviate lower back pain, walk for only fifteen to twenty minutes, sit for no more than thirty minutes before needing to walk, and she cannot lift and twist. (TR 27-28, 34). She testified that she can lift up to a gallon of milk occasionally but nothing more. (TR 28). Her husband handles the housekeeping and most of the grocery shopping. She has a driver's license but does not like to drive long distances because the steering wheel vibration causes her hands to go numb. Plaintiff testified that she has no difficulty descending the nine steps to her bedroom in the basement of her home and claims that the pain in her lower back disrupts her sleep. (TR 29-31).

Plaintiff testified that she had surgery on her back in 2003. (TR 29). She wears a back brace and takes pain medication to help her cope. Plaintiff takes one to two naps each day and claims that

she spends most of her time sitting and watching television, which is contrary to her testimony that she can only sit for up to thirty minutes at a time. (TR 30, 32). She suffers from Raynaud's disease and depression and claims that both conditions are controlled with medication, although she claims to suffer from numbness in her fingers and difficulty opening jars due to the Raynaud's disease.

**B.     Medical Evidence**

The medical record reveals that Plaintiff began complaining of right lower back and left leg pain in 2000 after she strained her back at work. (TR 169). On August 18, 2003 Plaintiff underwent a lumbar spondylosis to correct a severely collapsed disc space at L5/S1 and slightly compressed S1 nerve root. (TR 119, 124). In November 2003, Dr. Dawn Tartaglione of Neurosurgical Consultants, P.C. observed that Plaintiff was weaning from wearing her lumbar brace and was feeling extremely well, with no back or leg pain and no further use of pain medication. (TR 122). Dr. Tartaglione noted that Plaintiff's x-rays revealed excellent placement of the cages and ongoing bony fusion anterior to the cages at L5/S1. She concluded that Plaintiff did not have to wear a brace any longer and recommended that she increase her activities to tolerance. (TR 122).

In December 2005 Plaintiff was involved in a motor vehicle accident and once again began experiencing back pain. (TR 149-53). She was referred to physical therapy on March 16, 2006 with a diagnosis of cervical, dorsal and lumbar myositis. (TR 149). Plaintiff reported that she was in constant pain with worsening symptoms. (TR 149). The physical therapist observed that Plaintiff had decreased range of motion of the spine and severe restrictions in thoracic and lumbar paraspinals with severe spasms, psoas, quadratus lumborum, pectoral musculature, scalenes and cervical paraspinals. (TR 152). The physical therapist concluded that Plaintiff's prognosis was very good and recommended four weeks of physical therapy with a long term goal of near normal functional

mobility.  (TR 152).

On September 15, 2007 Dr. Jared Griffith conducted an examination of Plaintiff at the request of the state disability determination service.  (TR 125-27).  Plaintiff complained of occasional back pain and reported that she could sit for thirty minutes before she needs to change position and feels relief when standing and walking.  (TR 125).  Dr. Griffith noted that Plaintiff has a history of low back pain, low back arthritis, hypercholesterolemia, hypertension, and gastric ulcer disease.  (TR 125).  He observed that Plaintiff had no difficulty getting on or off the examination table with heel-toe walking or with squatting, had no tenderness or effusion of any joint, and had symmetrical reflexes with full lumbar spine range of motion.  (TR 127).

On September 19, 2007 Gary Lonik completed a Physical Residual Functional Capacity Assessment on behalf of the state disability determination service.  (TR 130-37).  Mr. Lonik opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand and sit for a total of six hours in an eight-hour workday, and had no limitations in her ability to push and pull.  (TR 131).  He noted that Plaintiff's gait and neurological examination were unremarkable, she had no difficulty with orthopedic maneuvers, had full lumbar range of motion, and full dexterity of her hands.  (TR 131-32).  Mr. Lonik opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.

On October 25, 2007 Dr. Paul Gold performed a CT of the lumbar spine and found two Ray cages in the fifth lumbar intervertebral disc space.  (TR 165).  Dr. Gold concluded that there was evidence of fusion of the respective intervertebral disc space but no evidence of other ancient or recent fracture, dislocation, or osseous pathology.  He opined that the surrounding soft tissue structures were unremarkable and the spinal canal and neural foramina patent.

### IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant work as a automotive assembly line worker is unskilled labor with light physical demands. (TR 36). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past relevant work experience who required unskilled labor, was limited to standing/sitting/walking six hours in an eight-hour day, and had an exertional limitation of fifteen to twenty pounds occasionally and ten pounds frequently. (TR 36-37). The VE testified that such an individual could perform Plaintiff's past relevant work. (TR 37). Next, the VE testified that the individual would remain capable of performing Plaintiff's past relevant work even if the exertional limitation in the hypothetical was reduced to ten pounds occasionally and five pounds frequently. (TR 37). The VE further testified that if the ALJ found that Plaintiff's testimony was credible and her exertional limitations were supported by the medical evidence there still existed a significant number of entry level, unskilled jobs at the sedentary exertional level that Plaintiff could perform. Examples of such sedentary jobs included simple assembly, packaging, sorting, and entry level jobs in the security field, including lobby attendant, gate attendant, and security monitor, comprising approximately 11,800 jobs in the State of Michigan. (TR 37).

The VE testified that if Plaintiff was required to take one to two naps each day for an hour at a time she would not be able to perform any job. (TR 38). The VE further testified that if Plaintiff's testimony were believed she would be limited to sedentary jobs that would allow her to change positions periodically and meet the grids as of her fiftieth birthday. (TR 38). The VE opined that his testimony that entry-level, sedentary, unskilled jobs exist in the security field differs from the Dictionary of Titles (DOT), which classifies that type of work as semi-skilled and light

exertional demands, and was based on the VE's experience placing workers in these types of jobs. (TR 38-39).

## V.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 10, 2005 through her date last insured of March 31, 2008, and suffers from the severe impairment of back disorders, she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 17).  The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform the full range of light work as defined in 20 CFR § 404.1567(b).  (TR 17-20).  The ALJ further concluded that because Plaintiff remained capable of performing past relevant work as an automotive assembly line worker through the date last insured, she was not under a disability as defined in the Social Security Act. (TR 20).

## VI.  LAW AND ANALYSIS

### A.  Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions.  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations

omitted).

**C.     Analysis**

Plaintiff argues that the ALJ erred in step four of the sequential analysis when he found that Plaintiff was not disabled because she was capable of performing the full range of light work and she could return to her past relevant work as an assembly line worker.  Instead, Plaintiff contends that ALJ Perez was bound by a prior ALJ denial dated June 9, 2005 which found that Plaintiff has an RFC for light work provided she is given the opportunity to alternate between sitting and standing as needed, with no work around unprotected heights, no driving, no climbing, no work around hazardous machinery, limited reaching over the chest or shoulder level, limited twisting and turning, limited squatting, no fine dexterity, only simple and routine tasks, and in a low stress work environment. (Docket no. 7 at p. 8).  Plaintiff maintains that the ALJ in the June 9, 2005 decision concluded that Plaintiff could not perform her past relevant work.  Plaintiff now argues that any subsequent decision addressing her entitlement to disability benefits is bound by the first ALJ's RFC and his conclusion that Plaintiff is not capable of performing her past relevant work.  Plaintiff contends that ALJ Perez not only failed to discuss the prior decision, but failed to explain why the current decision finds a less restrictive RFC and opines that Plaintiff can return to her past relevant work.  (Docket no. 7 at p. 9).

In *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit applied the principles of res judicata to bar a social security claimant from relitigating issues previously determined by the Commissioner absent evidence that the claimant's condition improved since the initial determination.  *Id*. at 842 ("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed

8

circumstances."). In *Drummond*, the claimant's disability application was denied after the ALJ concluded that she was unable to perform her past relevant work but retained an RFC for sedentary work. Claimant subsequently filed a second and a third application. On claimant's third application the ALJ denied benefits, this time finding that the claimant was capable of performing medium level work and could perform her past relevant work as a textile machine operator. The ALJ on the third application was not only aware of the initial decision denying benefits, but considered the Commissioner's initial decision in his own determination. *Id*. at 838-39. The Sixth Circuit court concluded that because substantial evidence was not introduced to show that the claimant's condition improved, the second ALJ was bound by the Commissioner's initial determination of the claimant's RFC. *Id.* at 843. *See also Brewster v. Barnhart*, 145 Fed. Appx. 542, 546 (6th Cir. 2005) (the "Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."), *and* Acquiescence Ruling 98-4(6) (the agency "must adopt a finding of a claimant's [RFC]...made in the final decision by an ALJ or the Appeals Council on the prior disability claim.").

Although Plaintiff challenges the ALJ's failure to address and adopt the prior ruling of the Commissioner, Plaintiff and her attorney failed to provide a copy of the prior ruling for the record. "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant," particularly if the claimant is represented by counsel. *Hunt v. Comm'r*, No. 06-12391, 2008 WL 2858685, at *2 (E.D. Mich. July 23, 2008) (citation omitted). "Given that the earlier decision is not part of the record in this case, the Court cannot assess whether and to what extent the ALJ was bound by any prior

9

determinations or findings." *Ulmer v. Comm'r*, No. 07-15446, 2009 WL 514107, at *11 (E.D. Mich. March 2, 2009); *Obuch v. Hluchaniuk*, No. 07-15270, 2009 WL 877697, at *19 (E.D. Mich. March 30, 2009); *Hunt v. Comm'r*, No. 06-12391, 2008 WL 2858685, at *2 (E.D. Mich. July 23, 2008). Because the prior ruling is not a part of the record, the undersigned finds that the ALJ did not err in failing to adopt the prior ruling of the Commissioner as it relates to Plaintiff's RFC and ability to perform past relevant work.

Next, Plaintiff argues that the ALJ failed to discuss the medical records that support Plaintiff's testimony and restrict her to sedentary work, in particular the physical therapy records of March 2006. The ALJ considered the medical records, addressed Plaintiff's history of back and leg pain, her arthritis, the lumbar spondylosis and fusion surgery, her car accident, and her complaints of pain to the physical therapist. The ALJ also noted Plaintiff's claims that she could only sit for thirty minutes before needing to change position, and her claims that her condition was so severe that she was unable to work. The ALJ then reviewed and discussed the medical evidence showing that Plaintiff did well following surgery, was no longer taking pain medication, and she had good range of motion of the lumbar spine following treatment with the physical therapist. As discussed above, the physical therapist concluded on initial assessment that Plaintiff's prognosis was very good and only recommended four weeks of therapy. The ALJ examined the medical records presented and thoroughly analyzed whether there was support in the record for Plaintiff's claims. The undersigned finds that substantial evidence supports the ALJ's determination.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of

Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 6, 2012           s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 6, 2012           s/ Lisa C. Bartlett
                              Case Manager